**Maritza Pubill RIVERA, Plaintiff(s),**

v.

**Zoe Laboy ALVARADO et als., Defendant(s).**

**No. CIV. 97–2815(JAG).**

United States District Court, D. Puerto Rico.

Jan. 9, 2003.

---

138

Wilma E. Reveron–Collazo, San Juan, PR, for plaintiff.

Max Perez–Preston, Hato Rey, PR, Judith Martinez–Fortier, San Juan, PR, Elfrick Mendez–Morales, Hato Rey, PR, Jose A. Diaz–Espinosa, Otero & Lopez, LLP, Jo–Ann Estades–Boyer, Judith Martinez–Fortier, Laura Belendez–Ferrero, Reichard & Escalera, Eileen Landron–Guardiola, Frederic Chardon–Dubos, Eduardo A. Vera–Ramirez, Landron & Vera LLP, Igor Dominguez–Perez, Norah E. Fernandez–Vallejo, Cruz–Soto & Fernandez Vallejo, Frederic Chardon–Dubos,

Landron & Vera LLP, Salvador J. Antonetti–Stutts, San Juan, PR, for defendants.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Plaintiff Maritza Pubill Rivera ("Pubill") brought suit pursuant to 42 U.S.C. § 1983, alleging that defendants, several administrators in the Corrections Administration and the Department of Health, as well as various doctors at the Bayamón Regional Hospital and the Correctional Complex of Bayamón, violated her son, Amaury Seise Pubill's ("Amaury") Eighth Amendment right to be free from cruel and unusual punishment. The Court has before it two motions to dismiss from co-defendants Jellytza Maldonado–Rondón ("Maldonado") and Dr. Ramon Rivera Schneider ("Rivera")(collectively "co-defendants")(Docket Nos. 146 & 147).[1] Pubill filed an opposition on September 11, 2002 (Docket No. 151). Maldonado filed a reply on October 7, 2002 (Docket No. 155). For the reasons stated below, the Court grants co-defendants' motions to dismiss.[2]

## FACTUAL BACKGROUND

Amaury was first incarcerated in 1992 at the Bayamón Regional Jail, then in the Juvenile Detention Center, and finally in Annex 1072 of the Bayamón Regional Jail. On July 31, 1996, medical personnel at the Correctional Health Division diagnosed Amaury with hepatitis C. On October 31, 1996, Amaury tested positive to the HIV virus. He did not receive follow-up or special treatment following either diagnosis. On November 30, 1996, Amaury again went to Correctional Health complaining of pain in the ribs, diarrhea, vomiting and appetite loss. The attending physician described Amaury as "acutely" sick and as having AIDS. Amaury remained there until the next day, December 1, at 10:35 p.m., when he was transferred to the Bayamón Regional Hospital. He arrived shortly after midnight on December 2, 1996. Once at the hospital, medical personnel administered medication and took x-rays of Amaury. He first received antibiotics on December 2 at 3:30 p.m. Amaury died the next day at 9:40 a.m.

Pubill alleges that defendants failed to adequately treat and provide medical care for Amaury. She contends that their acts or omissions rose to the level of deliberate indifference and violated his constitutional right to be free from cruel and unusual punishment.

1. On August 11, 1998, the Court granted Miguel Rivera's Motion for summary judgment (Docket No. 15). On May 15, 1998, Pubill voluntarily dismissed all claims against Zoe Laboy in her personal capacity (Docket No. 22). On March 5, 1999, the Court issued an Opinion and Order dismissing all claims against Carmen Feliciano, Nydia Cotto–Vives and Joe Colón in their personal and official capacities and the remaining claims against Zoe Laboy in her official capacity (Docket No. 36). On June 7, 2002, the Clerk entered default against defendant Amaury Hernandez (Docket No. 74), and subsequently entered default judgment against him on October 6, 2000 (Docket No. 80). On May 31, 2002, the Court granted Jose O. Curet and Jose Madera's motion to dismiss and entered judgment dismissing all claims against them (Docket Nos. 140 & 141). On April 12, 2002 the Court mooted Pubill's request for an extension of time to serve summons upon Dr. Nessa Torres Reyes. The record does not show that Pubill ever properly served summons on her. As a result, she never became a party to this action.

2. Following this order, the only remaining defendant in this case will be Nilma Rosado–Villanueva. The court entered default against Rosado–Villanueva on October 22, 2002 and subsequently mooted her motion to set aside default (Docket No. 131). As to Rosado–Villanueva, the Court will schedule a default hearing in a separate Order to assess damages.

## DISCUSSION

### I. Motion to Dismiss Standard

■ Pursuant to Fed.R.Civ.P. 12(b)(6), a complaint may not be dismissed unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *See Brown v. Hot, Sexy, and Safer Prods., Inc.*, 68 F.3d 525, 530 (1st Cir.1995). The Court accepts all well-pleaded factual allegations as true, and draws all reasonable inferences in favor of plaintiff. *See Correa–Martinez v. Arrillaga–Belendez*, 903 F.2d 49, 51 (1st Cir.1990). The Court need not credit, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like" when evaluating the Complaint's allegations. *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir.1996). When opposing a Rule 12(b)(6) motion, "a plaintiff cannot expect a trial court to do his homework for him." *McCoy v. Massachusetts Institute of Tech.*, 950 F.2d 13, 22 (1st Cir.1991). Plaintiff is responsible for putting his best foot forward in an effort to present a legal theory that will support his claim. *Id.*, at 23 (*citing Correa–Martinez*, 903 F.2d at 52). Plaintiff must set forth "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir.1988).

### II. Maldonado and Rivera's Motion to Dismiss

Co-defendants make three arguments to support their motions to dismiss: (1) that the claims against them are time-barred because Pubill included them as defendants after the statute of limitations expired; (2) that their conduct did not rise to the level of deliberate indifference; and (3) that they are immune from tort liability under 26 L.P.R.A. § 4105. The Court concludes that Pubill's claims are timely under Fed.R.Civ.P. 15(c)(1) and the tolling provisions of Puerto Rico law. Nonetheless, the Court finds that Pubill has failed to state a claim for cruel and unusual punishment under the Eight Amendment because the record does not demonstrate that co-defendants acted with deliberate indifference to Amaury's medical condition. Because this finding is sufficient to dispose of the case, the court need not address co-defendants' immunity arguments.

### II. Statute of Limitations

■ In their motions to dismiss, co-defendants allege that the claims against them are time-barred because the Fourth Amended complaint that included them as defendants does not relate back to the date of the filing of the original complaint under Rule 15(c)(3).[3] Pubill filed her original complaint on December 2, 1997, within the one-year statute of limitations for § 1983

---

**3.** Rule 15(c) of the Federal Rules of Civil Procedure states in relevant part that:

An amendment of a pleading relates back to the date of the original pleading when

(1) relation back is permitted by the law that provides the statute of limitations applicable to the action, or

(2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or

(3) the amendment changes the party or the naming of the party against whom a

claim is asserted if the foregoing provision (2) is satisfied and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

actions.[4] That complaint, however, referred to unnamed defendants Peter Roe, Charlie Roe, etc. It did not include Maldonado and Rivera by name. Instead, Pubill added them more than three years later in the Fourth Amended complaint filed on April 26, 2001 (Docket No. 104).

Pubill's argues that even if there is no relation back under Rule 15(c)(3), she can take advantage of Puerto Rico law pursuant to Rule 15(c)(1) to toll the one-year statute of limitations and add co-defendants as joint tortfeasors. (Docket No. 151 at 28–31; Docket No.155 at 9–11.) She maintains that the timely filing of her original complaint including Doe defendants tolled the statute of limitations against all joint-tortfeasors such that Maldonado and Rivera could be included by name at any time, so long as the cause of action against the originally named defendants remained alive. Co-defendants, on the other hand, contend that even if tolling is applied, Pubill's claims against Maldonado and Rivera are time-barred. They suggest that although the one-year prescriptive period for § 1983 actions was interrupted by Pubill's timely filing of the initial complaint, this only tolled the claim for another year, rather than indefinitely. They argue that since Pubill filed her Fourth Amended complaint after the one-year tolling period elapsed, the claims against them are untimely.

■ Rule 15(c)(1) makes clear that if Puerto Rico law allows relation back, that law should control to save the claim. *Rivera–Ramos v. Roman*, 156 F.3d 276,

282(1st Cir.1998) ("For section 1983 actions, federal law governs the date on which the cause of action accrues while the length of the period and tolling doctrine are taken from local law.") Article 1874 of the Puerto Rico Civil Code provides that "the interruption of prescription against one defendant also tolls the statute against any other defendants who are solidarily liable with the first." 31 L.P.R.A. § 5304(1991)[5]; *see also Tokyo Marine & Fire Ins. Co. v. Perez & Cia., De P.R., Inc.*, 142 F.3d 1, 4 (1st Cir.1998). The Supreme Court of Puerto Rico has ruled that the doctrine of solidarity allows a plaintiff to amend a complaint to include joint tortfeasors not originally included in the complaint so long as the original complaint was timely filed and the element of solidarity was well pled. *Arroyo v. Hospital La Concepcion*, 130 D.P.R. 596 (1992). All that is required is that the newly added tortfeasors are solidarily liable with the original defendants and that the causes of action asserted against them are identical to those alleged against the original defendants. *See Rodriguez Narvaez v. Nazario*, 895 F.2d 38, 44 (1990); *see also Tokyo Marine*, 142 F.3d at 4.

■ The claims against Maldonado and Rivera meet both requirements. They are solidarily liable with the originally named doctor defendants and the causes of action asserted against them are identical to those alleged in the original complaint. Physicians may be held jointly and solidarily liable for their multiple acts, omissions

4. Because section 1983 lacks an accompanying federal statute of limitations, the Supreme Court has held that Courts should apply the forum state statute of limitations governing personal injury actions. *See Owens v. Okure*, 488 U.S. 235, 236, 109 S.Ct. 573, 102 L.Ed.2d 594(1989). The Puerto Rico Civil Code provides for a one-year prescriptive period for such actions. *See* 31 L.P.R.A. § 5298(2); *see*

*also Pagan Velez v. Laboy Alvarado*, 145 F.Supp.2d 146, 152 (D.P.R.2001).

5. A prescriptive period under Puerto Rico law can be interrupted in one of three ways: "by the institution of an action before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." *See* 31 L.P.R.A. § 5303.

and events that combined to cause them, even when the actions are not contemporary. *See Riley v. Rodriguez De Pacheco,* 119 D.P.R. 762, 10 P.R. Offic. Trans. 806, 851–52, 1987 WL 448254 (1987); *see also Cruz v. Centro Medico de Puerto Rico,* 113 D.P.R. 719, 744, 13 P.R. Offic. Trans. 931, 960–962, 1983 WL 204245 (1983).

■ The caselaw suggests that tolling operates differently when the prescriptive period is tolled by filing a complaint versus when it is tolled by an extrajudicial claim. *See generally Serrano–Strubbe v. Hernandez–Plana,* No. 99–1056, 2002 U.S. Dist. Lexis 20468 at 14–17 (Magistrate Delgado's Report & Recommendation)(D.P.R. March 21, 2002); *also compare Tokyo Marine,* 142 F.3d at 4, *with Arroyo,* 130 D.P.R. 596, 1992 WL 755630, official translation at 9 (1992). A judicial claim, that is, the filing of a timely complaint, will toll the statute of limitations for the entire duration of the case, regardless of its outcome. In this case, Pubill's timely filing of her initial complaint tolled the statute of limitations as to all joint tortfeasors, whether named or unnamed. Any subsequent amendments to the complaint adding joint tortfeasors and alleging the same claims filed against the original defendants are consequently not time barred. *Id.* at.9–10.

In conclusion, by timely filing her initial complaint on December 2, 1997, Pubill tolled the statute of limitations as to the unnamed co-defendant joint tortfeasors. Accordingly, her claims against co-defendants Maldonado and Rivera are timely.

### III. Deliberate Indifference

Co-defendants alternatively move to dismiss on the basis that their actions did not rise to the level of deliberate indifference required to establish that medical mistreatment constitutes a violation of the Eight Amendment (Docket No. 146 at 13). Pubill contends that co-defendants reck-lessly and deliberately failed to provide medical attention to Amaury in compliance with the standards accepted by the medical community (Docket No. 151 at 37). For the reasons set forth below, the Court concludes that co-defendants' actions did not rise to the level of deliberate indifference and that the claims against them should be dismissed.

The Supreme Court has set forth the deliberate indifference inquiry in two seminal cases: *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), and *Farmer v. Brennan,* 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). *Estelle* recognized that the government's failure to provide medical care for those whom it is punishing by incarceration could constitute a violation of the Eight Amendment's mandate against cruel and unusual punishment. *Estelle,* 429 U.S. at 103, 97 S.Ct. 285; *see also Helling v. McKinney,* 509 U.S. 25, 113 S.Ct. 2475, 125 L.Ed.2d 22 (1993). In *Farmer,* the Court elaborated a two-prong test to determine whether a deprivation, such as failing to attend to a prisoner's medical needs, rose to the level of a constitutional violation: (1) the alleged deprivation must be objectively sufficiently serious and, (2) the defendants must have a culpable state of mind, meaning that the defendant was deliberately indifferent to the inmate's health or safety. *See Giroux v. Somerset County,* 178 F.3d 28, 32 (1st Cir.1999); *Dennison v. Prison Health Services,* 2002 WL 31026529 (D.Me.)(*citing Farmer,* 511 U.S. at 834, 114 S.Ct. 1970).

■ Amaury's AIDS diagnosis and his condition constituted a serious medical need. *See Gaudreault v. Municipality of Salem, Mass.,* 923 F.2d 203, 208 (1st Cir. 1990) (holding that a serious medical need is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would

easily recognize the necessity for a doctor's attention); *see also Muñiz–Souffront v. Laboy Alvarado*, 115 F.Supp.2d 237, 242 (D.P.R.2000)("A medical need is serious if it causes extreme pain, results in death or degeneration."). To prevail on this motion to dismiss, therefore, Pubill must allege enough facts to support an inference that Maldonado and Rivera subjectively and intentionally disregarded Amaury's need for medical care.

■ Deliberate indifference exists when the "official knows of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. 1970; *see also Giroux*, 178 F.3d at 32. "A prison official's failure to alleviate a significant risk that he should have perceived but did not is insufficient to establish an Eighth Amendment violation." *Pubill–Rivera v. Curet*, 218 F.Supp.2d 89, 94 (D.P.R.2002). A wanton decision to deny or delay care may constitute deliberate indifference only if the action is reckless in the sense that it requires actual knowledge of impending harm that is easily preventable. *See Watson v. Caton*, 984 F.2d 537, 540 (1st Cir.1993) *(citing Wilson v. Seiter*, 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)); *see also DesRosiers v. Moran*, 949 F.2d 15, 19 (1st Cir.1991). "The requisite state of mind may be manifested by the official's response to an inmate's known needs or by denial, delay or interference with prescribed health care." *Id. citing Estelle*, 429 U.S. at 104–5, 97 S.Ct. 285. Nonetheless, "determining the wantonness of the defendants conduct depends not upon its effects on the inmate, but rather on the practical constraints facing prison officials and doctors." *Muniz Souffront*, 115 F.Supp.2d at 242. To establish

deliberate indifference, therefore Pubill must establish that Maldonado and Rivera knew that Amaury was at risk and decided not to do anything to prevent that harm from occurring even though they could have easily done so. *Verser v. Elyea*, 113 F.Supp.2d 1211, 1214 (1st Cir.2000)

■ Moreover, "the courts have consistently refused to create constitutional claims out of disagreement between prisoners and doctors about the proper course of a prisoners medical treatment, or to conclude simple medical malpractice rises to the level of cruel and unusual punishment." *Watson*, 984 F.2d at 539–40. Without a sufficiently serious deprivation of medical care, there can be no constitutional violation. A bad attitude by a medical provider or a doctor's negligence in his choice of medications or treatment is not actionable under the Eight Amendment. *See Dennison*, 2002 WL 31026529 at *7; *see also Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

■ Furthermore, even when a defendant knows of a substantial risk to an inmate's health or safety and he fails to prevent the harm, he may be found not liable if he responds reasonably to the risk. *See Giroux*, 178 F.3d at 32 *citing Farmer*, 511 U.S. at 844, 114 S.Ct. 1970.

■ The complaint simply does not support a conclusion that there was deliberate indifference to Amaury's medical needs. The chosen course of action and treatment does not demonstrate recklessness or intentional conduct to constitute deliberate indifference. (*See Verser*, 113 F.Supp.2d at 1214–15); *see also Calderon–Ortiz v. Laboy–Alvarado*, 300 F.3d 60, 65–66 (1st Cir.2002); *Miranda v. Munoz*, 770 F.2d 255 (1st Cir.1985). Once Amaury was admitted at the Bayamón Regional Hospital, the medical staff took x-rays and administered antibiotics. The fact that it

took them several hours to do so is insufficient to presume that Maldonado and Rivera had the recklessness or the intentionality needed to surmise that they deliberately deprived Amaury of the medical attention he deserved. *See Verser,* 113 F.Supp.2d at 1214–15 (citing *Snipes v. De Tella,* 95 F.3d 586, 591 (7th Cir.1996) (a prisoner does not have a constitutional right to choose his treatment, and a court will not second guess matters of professional judgment)); *see also Navedo v. Maloney,* 172 F.Supp.2d 276, 285 (D.Mass. 2001). Pubill has not established that the chosen course of conduct was unreasonable and nothing suggests that the medical judgment in this case was misguided or that treatment was recklessly and deliberately refused. *Watson,* 984 F.2d at 540. The medical care that plaintiff establishes in her complaint was provided to Amaury at the Bayamón Regional Hospital, does not appear to be grossly inadequate to constitute a knowing denial of medical care required to establish a constitutional violation. *DesRosiers,* 949 F.2d at 20. The complaint fails to specifically aver that co-defendants knowingly disregarded a known harm and thus acted with deliberate indifference to Amaury. *Pubill–Rivera,* 218 F.Supp.2d at 94. Proving that co-defendants could have done more in terms of treating Amaury is insufficient to establish that they were deliberately indifferent to Amaury's medical needs. *See Navedo,* 172 F.Supp.2d at 285.

▉ Additionally, it is noteworthy that Maldonado and Rivera did not play a significant role in the decisions regarding Amaury's treatment. *See generally Pelletier v. Magnusson,* 201 F.Supp.2d 148 (D.Me.2002) (Holding that medical doctor was not liable for inmate's suicide because he did not have a significant role in the mental health treatment of the inmate despite being director of medical services

and having personally treated inmate). Maldonado was a first-year medical resident student from the Universidad Central del Caribe. (Docket No. 46 at 12). Rivera was the attending physician in charge of several residents at the Hospital. To establish a constitutional violation, a plaintiff must establish that each co-defendant's acts or omissions deprived the victim of his protected rights. *Muniz–Souffront,* 115 F.Supp.2d at 241. The facts alleged in the complaint simply do not meet this level of specificity.

The allegations in the complaint, even when viewed in the light most favorable to plaintiff, fail to establish that co-defendants acted with deliberate indifference to trigger a constitutional violation.

### CONCLUSION

In light of the foregoing, the Court GRANTS defendant's motion to dismiss (Docket Nos. 146 and 147) and dismisses all federal claims against co-defendants Maldonado–Rondón and Rivera Schneider with prejudice.

IT IS SO ORDERED.